## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

DARIZMA ANDRADE, individually, and on
behalf of all other similarly situated current and
former employees,

        Plaintiff,

        Civil Action No. 08-cv-3703

   -vs.-

JP MORGAN CHASE BANK, N.A., JP MORGAN
CHASE & CO., JP MORGAN CHASE BANK,
a Corporation, JP MORGAN CHASE BANK, a      **Document filed electronically**
Corporation d/b/a JP MORGAN CHASE BANK,
and DOES 1-100,

        Defendants.

-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## OR STRIKE BY DEFENDANT JPMORGAN CHASE BANK, N.A.

**MORGAN, LEWIS & BOCKIUS LLP**
Sam S. Shaulson (SS 0460)
101 Park Avenue
New York, NY 10178-0060
Telephone:  212-309-6718
Fax:  212-309-6273
sshaulson@morganlewis.com

Attorneys for Defendant
JPMorgan Chase Bank, N.A.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................................ 4

ARGUMENT ......................................................................................................................... 5

    I.     PLAINTIFF'S CLAIM FOR WAGES UNDER ARTICLE 6 SHOULD BE
         DISMISSED BECAUSE PLAINTIFF DOES NOT ALLEGE SUBSTANTIVE
         VIOLATION OF THE LABOR LAW ............................................................ 5

    II.    PLAINTIFF'S CLAIM FOR OVERTIME SHOULD BE DISMISSED
         BECAUSE THERE IS NO OVERTIME STATUTE IN NEW YORK AND THE
         COMMISSIONER OF LABOR EXCEEDED HIS AUTHORITY IN
         ATTEMPTING TO CREATE ONE BY REGULATION ............................. 7

    III.   EVEN IF PLAINTIFF CAN MAINTAIN HER INDIVIDUAL CLAIMS, HER
         CLASS CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW ........ 13

         A.     Plaintiff's Class Claims Violate CPLR § 901(b) ........................... 13

         B.     Plaintiff's Purported Waiver Of Rights On Behalf Of Herself And The
              Putative Class Renders Her And Her Counsel Inadequate Representatives ... 17

         C.     Plaintiff's Class Claim Should Be Dismissed Because A Class Action Is
              No Superior To Other Available Methods Of Adjudication .......................... 20

CONCLUSION .................................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

Alix v. Wal-Mart Stores, Inc.,
838 N.Y.S.2d 885 (N.Y. Sup. Ct. 2007), aff'd 2008 Slip Op. 9509, 2008 N.Y. App. Div.
LEXIS 9210 (3d Dep't Dec. 4, 2008) .......................................................................... 3, 21, 22

Alix v. Wal-Mart Stores, Inc.,
838 N.Y.S.2d 885 (N.Y. Sup. Ct. 2007), aff'd No. 504339 (3rd Dep't December 4, 2008)... 23, 24

Amchem Prods. v. Windsor,
521 U.S. 591 (1997) ......................................................................................................... 19

Matter of Angello v. National Finance Corp.,
769 N.Y.S.2d 66 (3rd Dep't 2003) ................................................................................ 22, 23

Asher v. Abbott Labs.,
737 N.Y.S.2d 4 (1st Dep't 2002) .................................................................................... 15, 16

Ballard v. Cmty. Home Care Referral Serv. Inc.,
695 N.Y.S.2d 130 (2d Dep't 1999) ...................................................................................... 14

Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA, Inc.,
344 F.3d 211 (2d Cir. 2003) ...................................................................................... 12, 15, 23

Boreali v. Axelrod,
71 N.Y.2d 1 (1987) ....................................................................................................... 2, 8, 9

Carter v. Frito-Lay, Inc.,
425 N.Y.S.2d 115 (1st Dep't 1980), aff'd, 52 N.Y.2d 994 (1981) ............................................ 3, 14

Caruso v. Allnet Communications Servs. Inc.,
662 N.Y.S.2d 468 (1st Dep't 1997) ...................................................................................... 14

Coca-Cola Bottling Co. v. Bd. of Estimate,
72 N.Y.2d 674 (1988) ......................................................................................................... 9

Connolly v. McCall,
254 F.3d 36 (2d Cir. 2001) ................................................................................................ 17

Cox v. Microsoft Corp.,
737 N.Y.S.2d 1 (1st Dep't 2002) ..................................................................................... 15, 16

Cox v. Microsoft Corp.,
778 N.Y.S.2d 147 (1st Dep't 2004) ...................................................................................... 16

De La Cruz v. Gill Corn Farms,
No. 03-CV-1133, 2005 WL 5419056 (N.D.N.Y. Jan. 25, 2005) .................................................. 19

Deshpande v. TJH Med. Servs.,
861 N.Y.S.2d 697 (2d Dep't 2008) .......................................................................................... 7, 12

Diaz v. Electronics Boutique of Am., Inc.,
No. 04-CV-0840, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ............................................ 12

Feinstein v. Firestone Tire & Rubber Co.,
535 F. Supp. 595 (S.D.N.Y. 1982) .............................................................................................. 20

Foster v. Food Emporium,
No. 99-CV-3860, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000) ...................................... 3, 14, 19

Gallegos v. Brandeis Sch.,
189 F.R.D. 256 (E.D.N.Y. 1999) ........................................................................................... 2, 6, 7

Health Ins. Ass'n of Am. v. Corcoran,
551 N.Y.S.2d 615 (3d Dep't 1990) aff'd, 76 N.Y.2d 995 (1990) ................................................ 8

Hornstein v. Negev Airbase Constructors,
488 N.Y.S.2d 435 (2d Dep't 1985) ....................................................................................... 2, 7, 9

Krichman v. JPMorgan Chase & Co.,
No. 06-CV-15305 (S.D.N.Y. Dec. 8, 2008) ......................................................................... 16, 17

Leider v. Ralfe,
387 F. Supp. 2d 283 (S.D.N.Y. 2005) ........................................................................................ 15

Mascol v. E&L Transp., Inc.,
No. 03-CV-3343, 2005 U.S. Dist. LEXIS 32634 (E.D.N.Y. 2005) .......................................... 12

In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,
209 F.R.D. 323 (S.D.N.Y. 2002) ............................................................................................... 19

Mike v. Safeco Ins. Co. of Am.,
223 F.R.D. 50 (D. Conn. 2004) .................................................................................................. 20

Miller v. Hekimian Labs., Inc.,
257 F. Supp. 2d 506 (N.D.N.Y. 2003) ...................................................................................... 5, 6

Myers v. The Hertz Corporation,
No. 02-CV-4325, 2007 U.S. Dist. LEXIS 53572 (E.D.N.Y. 2007) ................................. 4, 19, 23

Parker v. Equity Adver. Agency, Inc.,
Mar. 10, 1982 N.Y.L.J. 11 (N.Y. Sup. Ct. 1982) ................................................................. 14

People v. Mobil Oil Corp.,
422 N.Y.S.2d 589 (Nassau Cty. 1979) ................................................................. 10

Reilly v. Reid,
45 N.Y.2d 24 (1978) ................................................................. 19

Rubin v. Nine West Group, Inc.,
No. 0763/99, 1999 WL 1425364 (N.Y. Sup. Ct. Nov. 3, 1999) ................................ 15, 16, 17

Russo and Dubin v. Allied Maint. Corp.,
407 N.Y.S.2d 617 (N.Y. Sup. Ct. 1978) ................................................................. 15

Schwartz v. Dana Corp./Parish Div.,
196 F.R.D. 275 (E.D. Pa. 2000) ................................................................. 21

Small v. Lorillard Tobacco Co.,
679 N.Y.S.2d 593, (1st Dep't 1998), aff'd, 94 N.Y.2d 43 (1999) ................................ 19

State v. Dougall,
570 P.2d 135 (Wash. 1977) ................................................................. 10

State v. Williams,
583 P.2d 251 (Ariz. 1978) ................................................................. 10

Super Glue Corp. v. Avis Rent a Car Sys. Inc.,
517 N.Y.S.2d 764 (2d Dep't 1987) ................................................................. 17

Tegnazian v. Consol. Edison, Inc.,
730 N.Y.S.2d 183 (N.Y. County 2000) ................................................................. 18

Tierney v. Capricorn Investors, L.P.,
592 N.Y.S.2d 700 (1st Dep't 1993) ................................................................. 5, 6

Utah League of Insured Sav. Ass'n v. State,
555 F. Supp. 664 (D. Utah 1983) ................................................................. 10

Webster v. Fall,
266 U.S. 507 (1925) ................................................................. 12

Westerfield v. Washington Mut. Bank,
No. 06-2817, 2007 WL 2162989 (E.D.N.Y. July 26, 2007) ................................ 16, 17

Western States Wholesale, Inc. v. Synthetic Indus. Inc.,
206 F.R.D. 271 (C.D. Cal. 2002) ................................................................................................20

Woods v. Champion Courier,
Oct. 9, 1998 N.Y.L.J. 26 (N.Y. Sup. Ct. 1998) .................................................................20, 24

Zaitsev v. Salomon Bros.,
60 F.3d 1001 (2d Cir. 1995) ...............................................................................................5, 6

Zheng v. Liberty Apparel Co. Inc.,
355 F.3d 61 (2d Cir. 2003) ......................................................................................................12

## LEGISLATIONS

N.Y. Const. Article III, Section 1 .............................................................................................8

## FEDERAL STATUTES

29 U.S.C. § 201 *et seq.* ......................................................................................................8, 9

29 U.S.C. § 206 ........................................................................................................................7

29 U.S.C. § 207 ........................................................................................................................7

29 U.S.C. § 213 *et seq.* ......................................................................................................7, 9

## STATE STATUTES

CAL. LABOR CODE § 511(b) (2004) .......................................................................................7

ME. REV. STAT. ANN. Labor and Industry § 664 (2003) ........................................................7

MICH. COMP. LAWS § 408.384a (2004) ..................................................................................7

MINN. STAT. § 177.25 (2004) ...................................................................................................7

N.Y. Labor Law Article 6, §§ 190 *et seq.*, Article 19 §§ 650 *et seq.* ......................6, 14, 15, 16

N.Y. Labor Law § 190 *et seq.* ..................................................................................................5

N.Y. Labor Law § 652 ...............................................................................................................7, 8

N.C. GEN. STAT. § 95-25.4 (2004) ..........................................................................................7

OHIO REV. CODE ANN. § 4111.03 (2004) .................................................................... 7

OR. REV. STAT. § 652.020 (2003) ............................................................................. 7

## FEDERAL RULES AND REGULATIONS

29 C.F.R. § 778 .................................................................................................. 10

29 C.F.R. § 541.0 *et seq.* ...................................................................................... 10

73 Fed. Reg. 43654 ............................................................................................. 11

Fed. R. Civ. P. 23 *et seq.* .............................................................................. 4, 13, 17, 20

## STATE RULES AND REGULATIONS

12 N.Y.C.R.R. § 142 *et seq.* ........................................................................ 6, 8, 9, 12

CPLR § 901(b) ..................................................................... 3, 13, 14, 15, 16, 18, 19

## OTHER AUTHORITIES

7B Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 1795 (3d ed. 2005) .................... 17

1982 N.Y.L.J. 11 .............................................................................................. 14

1998 N.Y.L.J. 26, (col. 1) (N.Y. County 1998) ............................................................. 24

<u>Limiting Portions of DOL's Final Rule</u>, Daily Lab. Rep. (BNA) No. 86, at AA-1 (May 5, 2004) ................................................................................................ 11

## PRELIMINARY STATEMENT

Plaintiff Darizma Andrade ("Plaintiff") was employed by Defendant JPMorgan Chase Bank, N.A. ("Chase") as a teller.  Plaintiff's employment was terminated after she disbursed $10,000 from a customer's account in violation of Chase's policies.  When confronted by the Company's Global Security and Investigations unit, Plaintiff claimed she gave a particular customer the money and processed the transactions later, after the customer left.  The customer denied ever withdrawing these funds, or even ever stepping foot into the branch at which Plaintiff worked.  Following the termination of her employment, several additional fraudulent withdrawals processed by the Plaintiff around the same time frame also were identified, totaling at least an additional $30,000.  None of these amounts has been recovered.

Plaintiff has now filed this putative class action claiming that she was not paid for all hours worked.  Plaintiff's first cause of action seeks straight-time compensation for hours she allegedly worked without compensation under Article 6 of the New York Labor Law.  Plaintiff's second cause of action seeks overtime compensation for overtime hours she allegedly worked without premium compensation under a New York State Department of Labor Regulation.  Plaintiff seeks to litigate her claims as a class action on behalf of all "tellers" employed in the State of New York during the past six years who "were required to perform tasks for the benefit of defendant off the clock without proper compensation, and/or worked in excess of 40 hours per week without overtime premium hourly wages." (Am. Compl. ¶ 28).

Chase vigorously disputes Plaintiff's claims as it regularly instructed Plaintiff to record all hours worked, and she was properly compensated for the work she performed during her employment.  The merits of Plaintiff's claims, however, is an issue for another day.  This motion seeks to dismiss both of Plaintiff's causes of action due to certain legal deficiencies that warrant their dismissal as a matter of law.  With respect to Plaintiff's Article 6 claim, it should be

dismissed because a claim for wages under Article 6 must be premised on a specific contractual promise by the employer to pay wages and may not be based on any alleged statutory obligation to pay wages or overtime pay. Plaintiff has not alleged, and cannot allege, any specific contractual agreement to pay the wages she claims are owed. Instead, Plaintiff alleges that Chase had a policy and practice of not paying for the alleged work (Am. Compl. ¶¶ 22, 23, and 31), and her claim is premised solely on Chase's alleged failure to pay wages required by statute, which is fatal to her claim under Article 6. Gallegos v. Brandeis Sch., 189 F.R.D. 256, 259 (E.D.N.Y. 1999) (plaintiff's claim "flies in the face of [New York state] case law . . . which requires the existence of a contractual, as opposed to a statutory right to wages sought under article 6").

Plaintiff's claim for overtime under the New York Labor Law also should be dismissed because "New York does not have a mandatory overtime law." Hornstein v. Negev Airbase Constructors, 488 N.Y.S.2d 435, 437 (2d Dep't 1985). Although the Commissioner of Labor has promulgated a regulation purporting to create an overtime law, that regulation is invalid because it is not authorized by the Labor Law and because "the legislative branch of government cannot cede its fundamental policy-making responsibility to an administrative agency." Boreali v. Axelrod, 71 N.Y.2d 1, 9 (1987). Moreover, even if the Commissioner had the authority to create an overtime law, the Commissioner's regulation, which simply incorporates the overtime requirements of the federal Fair Labor Standards Act, as it changes over time without ever being considered or adopted by the New York legislature or Commissioner of Labor, is an impermissible abdication of the Commissioner's responsibility.

In addition, even if Plaintiff's substantive claims could somehow survive, Plaintiff's class claims under the New York Labor Law should still be dismissed as a matter of law for three

separate reasons. First, Plaintiff's class claims are barred by CPLR § 901(b), which prohibits the bringing of a class claim where the statute under which the suit is brought provides for a "penalty." Under controlling authority from the Court of Appeals and the First Department, Plaintiff may not maintain her class claims under the New York Labor Law because that law "provides for liquidated damages and does not contain the necessary clause allowing these damages to be recovered in a class-action." Carter v. Frito-Lay, Inc., 425 N.Y.S.2d 115, 116 (1st Dep't 1980), aff'd, 52 N.Y.2d 994 (1981). In addition, Plaintiff cannot waive liquidated damages because the penalty is mandatory under Section 198.

Second, to the extent that Plaintiff seeks to avoid the bar of Section 901(b) by attempting to waive liquidated damages on behalf of herself and every putative class member, Plaintiff and her counsel are inadequate class representatives. New York courts have repeatedly held that a plaintiff who fails to pursue all claims and remedies that would be available to the class cannot be an adequate class representative, because doing so would forever bar those claims from being brought as a matter of res judicata. Foster v. Food Emporium, No. 99 CIV 3860, 2000 WL 1737858, at *3 n.3 (S.D.N.Y. Apr. 26, 2000). By foregoing this statutory penalty, equal to 25 percent of the relief available to each member of the class, Plaintiff and her counsel have substantially compromised their ability to adequately represent the putative class.

Finally, under controlling New York law, a class action is not the superior method for adjudicating Plaintiff's New York Labor Law claims. New York's Appellate Division ruled recently that administrative enforcement actions through the New York State Commissioner of Labor provide a superior method by which the wage claims of the plaintiff and putative class members can be pursued. Alix v. Wal-Mart Stores, Inc., 2008 Slip Op. 9509, 2008 N.Y. App. Div. LEXIS 9210, *9 (3d Dep't Dec. 4, 2008). Notably, a significant additional benefit of

pursuing claims through administrative enforcement rather than an opt-out class action is that putative class members would not need to waive liquidated damages (25% of their recovery), or surrender up to a third of their already-diminished recovery for attorneys' fees. See Myers v. The Hertz Corporation, 2007 U.S. Dist. LEXIS 53572, * 20 (E.D.N.Y. 2007) (denying class certification in part because plaintiffs pursuing the class action must make "at least one significant sacrifice over people who sue individually—waive their entitlement to recover liquidated damages"). As such, Plaintiff cannot satisfy a mandatory element of Fed. R. Civ. P. 23(b)(3).

For all of these reasons, Chase respectfully requests that the Court dismiss both of Plaintiff's causes of action in their entirety or, alternatively, dismiss or strike Plaintiff's class claims.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff, a former bank teller at Chase, filed this action on August 4, 2008.[1] Plaintiff asserts, on behalf of herself and each putative class member, two causes of action – a cause of action for straight-time compensation for hours she allegedly worked without compensation, and a cause of action for overtime compensation for overtime hours she allegedly worked without premium compensation. Plaintiff seeks to represent a class of all "tellers," "personal tellers," "business tellers," and "head tellers" employed in the State of New York by Chase who "were required to perform tasks for the benefit of defendant off the clock without proper compensation, and/or worked in excess of 40 hours per week without overtime premium hourly wages." (Am. Comp. ¶ 28).

---

[1]  Plaintiff initially filed this action in the Supreme Court of the State of New York, County of Kings, on or about August 4, 2008, against Defendants "JPMorgan Chase & Co., JP Morgan Chase Bank, a Corporation, JP Morgan Chase Bank d/b/a JP Morgan Chase Bank, and Does 1-100."

Defendants removed this action to federal court on September 11, 2008.  Following a pre-motion conference with the Court, Plaintiff filed an amended complaint on November 10, 2008, dismissing any claims for failure to provide meal periods (for which there is no private right of action), but persisting with the remaining claims notwithstanding the legal deficiencies identified in Chase's pre-motion conference request.[2]

## ARGUMENT

**I.    PLAINTIFF'S CLAIM FOR WAGES UNDER ARTICLE 6 SHOULD BE DISMISSED BECAUSE PLAINTIFF DOES NOT ALLEGE A SUBSTANTIVE VIOLATION OF THE LABOR LAW.**

Plaintiff has no claim for wages under Article 6 of the New York Labor Law.  It is well-settled that a claim for wages under Article 6 must be premised on a specific contractual promise by the employer, and may <u>not</u> be based on any alleged statutory obligation to pay minimum wages or overtime pay.  <u>Tierney v. Capricorn Investors, L.P.</u>, 592 N.Y.S.2d 700, 703 (1st Dep't 1993) (reversing lower court's refusal to dismiss plaintiff's Labor Law claim for wages where "[t]he plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages"); <u>Zaitsev v. Salomon Bros.</u>, 60 F.3d 1001, 1004 (2d Cir. 1995) ("Because [plaintiff] can prove no contract that will satisfy the Statute of Frauds, his claim of unpaid wages under New York Labor Law § 190 *et seq.* was properly dismissed"); <u>Miller v. Hekimian Labs., Inc.</u>, 257 F. Supp. 2d 506, 519 (N.D.N.Y. 2003) (plaintiff not entitled to unpaid commissions under New York Labor Law because he had no enforceable contractual right to those commissions).

In this case, Plaintiff seeks to do exactly what is prohibited by controlling New York law – base her Article 6 wage claim solely on alleged statutory violations.  (<u>See, e.g.</u>, Am.

---

[2]    By stipulation filed on December 22, 2008, Plaintiff also dismissed JPMorgan Chase & Co., "JP Morgan Chase Bank, a corporation," and "JP Morgan Chase Bank, a corporation d/b/a JP Morgan Chase Bank."

Compl. ¶¶ 2 (alleging that her performance of work performed in excess of 40 hours without receiving compensation at one and one-half times the regularly hourly rate is a "violation of New York Labor Law Article 6, §§ 190 *et seq.*, Article 19 §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 *et seq.*")). The case of Gallegos v. The Brandeis School, 189 F.R.D. 256 (E.D.N.Y. 1999), is instructive. The plaintiff in Gallegos, a janitor employed by the defendant school, sought unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiff then moved to amend his complaint to add a state law claim under the New York Labor Law for unpaid overtime wages. Id. at 258. The district court concluded that the attempt to amend would be futile as a matter of law, stating that:

> The gist of the plaintiff's argument appears to be that he has a right to overtime wages pursuant to the FLSA and that this right suffices to allege a substantive violation of article 6 of the Labor Law which, in turn, permits him to bring a claim under section 198. This argument flies in the face of [New York state] case law, however, which requires the existence of a contractual, as opposed to a statutory right to wages sought under article 6.

Id. at 259 (emphasis added). Indeed, the Gallegos court could not have been more clear when it stated that "[a]bsent such a *contractual* [right], as opposed to a statutory right, any section 198 claim must fail." (Id.) (emphasis in original).

Plaintiff here does not and cannot base her Article 6 claim on any specific contractual agreement to pay wages. To the contrary, Plaintiff alleges that "Chase Bank" had a policy, pattern, and practice of not paying proper wages to its tellers for all hours worked. (See, e.g., Am. Compl. ¶ 1 ("CHASE BANK has engaged in a practice of not paying proper wages to its tellers for all hours worked..."); Id. ¶ 22 ("defendant engaged in various policies and practices of failing to provide employees with compensation required under New York law"); see also Am. Compl. ¶¶ 2, 15-18. 19-25, 31). Accordingly, as was the case in Tierney, Zaitsev, Miller, and Gallegos, Plaintiff's claim for wages under Article 6 should be dismissed.

II.   **PLAINTIFF'S CLAIM FOR OVERTIME SHOULD BE DISMISSED BECAUSE THERE IS NO OVERTIME STATUTE IN NEW YORK AND THE COMMISSIONER OF LABOR EXCEEDED HIS AUTHORITY IN ATTEMPTING TO CREATE ONE BY REGULATION.**

Plaintiff's claim for overtime under Article 19 of the New York Labor Law, titled the Minimum Wage Act, and New York State Department of Labor Regulations should be dismissed because "New York does not have a mandatory overtime law." Hornstein v. Negev Airbase Constructors, 488 N.Y.S.2d 435, 437 (2d Dep't 1985); see also Deshpande v. TJH Med. Servs., 861 N.Y.S.2d 697 (2d Dep't 2008) (the "Labor Law does not contain any provisions governing overtime compensation"); Gallegos, 189 F.R.D. at 259 ("New York does not have a mandatory overtime law"). As these courts have recognized, the New York Labor Law establishes no substantive obligation to pay overtime; nor does the Labor Law contain a definition of a standard work week or a standard work day – concepts which are necessary to any statutory obligation to pay overtime.

The FLSA contains separate statutory provisions for the "minimum wage" (29 U.S.C. § 206), "maximum hours" (which is the overtime provision, 29 U.S.C. § 207), and "exemptions" to the minimum wage and maximum hours provisions (29 U.S.C. § 213). New York's Minimum Wage Act, by contrast, includes only a minimum wage requirement. N.Y. Labor Law § 652. The Minimum Wage Act does not contain any "maximum hours," or overtime provisions.[3]

_____

[3]   Similarly, the absence of an overtime obligation in the Minimum Wage Act contrasts with the express overtime requirements found in the laws of other states. See, e.g., CAL. LABOR CODE § 511(b) (2004) ("An overtime rate of compensation of no less than double the regular rate of pay of the employee shall be paid for any work in excess of 12 hours per day and for any work in excess of eight hours on those days worked beyond the regularly scheduled workdays."); ME. REV. STAT. ANN. Labor and Industry § 664 (2003) ("An employer may not require an employee to work more than 40 hours in any one week unless 1 1/2 times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week."); MICH. COMP. LAWS § 408.384a (2004) ("[A]n employee shall receive compensation at not less than 1-1/2 times the regular rate at which the employee is employed for employment in a workweek in excess of 40 hours."); MINN. STAT. § 177.25 (2004) ("No employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed."); N.C. GEN. STAT. § 95-25.4 (2004) ("Every employer shall pay each employee who works longer than 40 hours in any workweek at a rate of not less than time and one half of

Indeed, the only mention of "overtime" at all is in Section 655, which permits the creation of a "wage board" to make recommendations for "minimum wages" and may recommend regulations governing, among other things, "overtime or part-time rates." N.Y. Labor Law § 655(b). Seizing upon the reference to the words "overtime rates" in Section 655(b), the Commissioner has promulgated a regulation that creates an overtime law where none exists in the statute.

The regulation -- entitled "Overtime rate" -- currently provides in pertinent part:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. § 201 et seq., the Fair Labor Standards Act of 1938, as amended . . . .

N.Y. Comp. Codes Rules & Regs. tit. 12, § 142-2.2 ("NYCCRR").

Under the New York State Constitution, however, "the legislative power of this state shall be vested in the senate and assembly." N.Y. Const. Article III, Section 1. As the New York Court of Appeals has held, the Legislature makes the fundamental policy decisions for residents and businesses in this State: "the legislative branch of government cannot cede its fundamental policy-making responsibility to an administrative agency." Boreali, 71 N.Y.2d at 9 (invalidating 10 NYCCRR part 25); see also Health Ins. Ass'n of Am. v. Corcoran, 551 N.Y.S.2d 615 (3d Dep't 1990) (invalidating 11 NYCCRR 52.27), aff'd, 76 N.Y.2d 995 (1990). Even where an administrative agency operates under a "broad enabling statute," an agency cannot "stretch[ ] that statute . . . as a basis for drafting a code embodying its own assessment of what public policy ought to be." Boreali, 71 N.Y.2d at 9.

---

the regular rate of pay of the employee for those hours in excess of 40 per week."); OHIO REV. CODE ANN. § 4111.03 (2004) ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek."); OR. REV. STAT. § 652.020 (2003) ("[E]mployees may work overtime not to exceed three hours in one day, conditioned that payment be made for said overtime at the rate of time and one-half the regular wage").

Although the Legislature can authorize an administrative agency to "fill in the details" of a statute, an agency cannot make the policy judgment whether to have an overtime law or not or what its broad parameters should be. Boreali, 71 N.Y.2d at 9. Simply stated, "New York does not have a mandatory overtime law," Hornstein, 488 N.Y.S.2d at 437, and the Commissioner of Labor had no authority to create one "without running afoul of the constitutional separation of powers doctrine." Boreali, 71 N.Y.2d at 14.

Even assuming *arguendo* that the Commissioner had authority to create a mandatory overtime law in the abstract, the regulation is invalid because the Commissioner has abdicated his responsibilities under Article 19 of the Labor Law by delegating his authority to other governmental bodies. See, e.g., Coca-Cola Bottling Co. v. Bd. of Estimate, 72 N.Y.2d 674, 680 (1988) (recognizing that state agencies may not defer or delegate their obligations to other agencies). Rather than craft any provisions for maximum hours or a standard workweek in the regulation, the Commissioner has incorporated virtually in toto the provisions of the federal FLSA – that overtime shall be paid "in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. § 201 et seq., the Fair Labor Standards Act of 1938, as amended" 12 NYCCRR § 142-2.2 (emphasis added). Section 13 of the FLSA, in turn, expressly incorporates the regulations of the U.S. Department of Labor – exempting from the federal minimum wage and overtime requirements individuals "employed in a bona fide executive, administrative, or professional capacity ... as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]...." 29 U.S.C. § 213(a)(1) (emphasis added). The United States Department of Labor has promulgated extensive regulations covering a wide variety of issues relating to overtime, that are amended and changed as the DOL feels is appropriate – all without the New York legislature or Commissioner of Labor

reviewing or passing upon those changes. Thus, the Commissioner has improperly delegated his

regulatory authority to spell out the terms of a substantive overtime obligation – including

matters such as the definition of the standard work week, exemptions from overtime coverage,

calculating the rate of pay, alternative methods of paying overtime, and a litany of other issues –

to the dictates, present and future, of both Congress and a federal administrative agency.[4]

As the court stated in People v. Mobil Oil Corp., 422 N.Y.S.2d 589 (Nassau Cty. 1979):

> [The County Legislature has] further provided that the provisions of the National Fire
> Protection Association rules and standards, as amended, shall be deemed a part of the
> ordinance. By enacting the association's amendments, prior to their adoption, the County
> of Nassau has delegated to the National Fire Protection Association sovereign and
> legislative power. ... The County has relinquished all control over the ordinance in
> question pertaining to flammable and combustible liquids to the National Fire Protection
> Association, and whatever standards may be adopted by that association in the future are
> automatically the law of the county.... Such a procedure is an improper delegation of
> legislative authority, and therefore unconstitutional.

Id. at 592. See also Utah League of Insured Sav. Ass'n v. State, 555 F. Supp. 664, 674 (D. Utah

1983) ("[I]t is universally held that an incorporation by state statute of rules, regulations, and

statutes of federal bodies to be promulgated subsequent to the enactment of the state statute

constitutes an unlawful delegation of legislative power."); State v. Williams, 583 P.2d 251, 254

(Ariz. 1978) ("Since the [Arizona] Legislature exercises absolutely no control over Congress or

its agencies, the adoption as state law of those bodies' prospective enactments is viewed as a

complete abdication of legislative power."); State v. Dougall, 570 P.2d 135, 138 (Wash. 1977)

("While the legislature may enact statutes which adopt *existing* federal rules, regulations, or

statutes, legislation which attempts to adopt or acquiesce in *future* rules, regulations or statutes is

an unconstitutional delegation of legislative power and thus void.") (emphasis in original).

---

[4]     Part 541 of the U.S. Secretary of Labor's current FLSA regulations regarding the administrative, executive,
and professional exemptions from overtime are more than 50 pages long and are codified at 29 C.F.R. § 541.0
et seq. The Secretary has also published regulations covering a variety of other issues relating to overtime,
such as the definition of the workweek, timing of payment, calculating the rate of pay, alternative methods of
paying overtime, and a litany of other issues. See, e.g., 29 C.F.R. Part 778.

Similarly, in this case, the Commissioner of Labor has ceded control over New York's overtime regulation to Congress and the U.S. Secretary of Labor. By incorporating the FLSA "as amended" and as its terms are "defined and delimited from time to time by regulations of the Secretary [of Labor]," the Commissioner has "relinquished all control" over the overtime regulation and improperly delegated whatever obligations it has to establish and administer the overtime regulation to Congress and to the U.S. Department of Labor.

The controversy surrounding the U.S. Secretary of Labor's amended regulations governing the exemptions to the FLSA (effective August 23, 2004) only highlights the evils associated with promulgating a law which incorporates statutes or regulations as they change from time to time. Indeed, the U.S. Secretary of Labor's overtime regulations generated substantial public disagreement among trade unions, employer groups, and other constituencies and caused considerable dissention in both Houses of Congress leading to repeated efforts by federal legislators to block the regulations from going into effect.[5] In addition, as recently as July 28, 2008, the U.S. Secretary of Labor has published additional changes to the overtime regulations, including how overtime payments may be calculated. 73 Fed. Reg. 43654 (July 28, 2008). It is simply not proper, and inconsistent with New York's State Constitution, for the Commissioner to have effectively ceded control over the substantive content of the New York's overtime regulation to the U.S. Secretary of Labor -- including present and future regulations of the federal agency that reflect controversial public policy choices.

---

[5]   See, e.g., Senate Approves Overtime Amendment Limiting Portions of DOL's Final Rule, Daily Lab. Rep. (BNA) No. 86, at AA-1 (May 5, 2004) (detailing Senate's passage of amendment blocking portions of the DOL's "controversial overtime pay rule" from going into effect and noting AFL-CIO's position that DOL was misleading the public about the true scope of the new regulations); see also Robert Crohan, "DOL Publishes Major Changes to 'White Collar' Overtime Rules, Monday Bus. Briefing, May 28, 2004, available at 2004 WL 69983397 (characterizing DOL regulations as "highly controversial" and noting Senate amendment to block the regulations' implementation).

Despite the authority set forth above, Chase acknowledges that the court in Diaz v. Electronics Boutique of Am., Inc., 2005 WL 2654270, at *6-7 (W.D.N.Y. Oct. 17, 2005), declined to rule that New York's overtime regulation is invalid. The court's ruling, however, came at the end of a lengthy decision denying class and collective action certification, effectively ending the case. Moreover, the ruling is founded upon the observation that the Second Circuit and other New York District Courts have "verified" that the overtime regulation "carries the force of law." However, the decisions cited by the Diaz court for that proposition did not address the validity of the regulation because there was no challenge to it. Id. at *8 (citing Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 78 (2d Cir. 2003); Mascol v. E&L Transp., Inc., 2005 U.S. Dist. LEXIS 32634 (E.D.N.Y. 2005)). These cases cannot be considered precedent for arguments that were not considered. See Webster v. Fall, 266 U.S. 507, 511 (1925) ("Questions . . . neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").

More importantly, following Diaz, the New York Appellate Division reaffirmed the position that the "Labor Law does not contain any provisions governing overtime compensation" in dismissing overtime claims that the plaintiff attempted to bring under New York law. Deshpande v. TJH Med. Servs., 861 N.Y.S.2d 697 (2d Dep't 2008). This decision is controlling here. See Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA, Inc., 344 F.3d 211, 221 (2d Cir. 2003) (federal courts are bound to apply state law as interpreted by the state's intermediate appellate courts absent persuasive evidence that the state's higher court, which has not ruled on the issue, would reach a different conclusion).

Because the Commissioner has exceeded his authority in promulgating 12 NYCCRR § 142-2.2, Plaintiff's claim for overtime under that regulation should be dismissed.

### III. EVEN IF PLAINTIFF CAN MAINTAIN HER INDIVIDUAL CLAIMS, HER CLASS CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW.

Even assuming, contrary to the arguments above, that Plaintiff can maintain her individual claims for wages and overtime, she cannot maintain these claims as a class action for three separate reasons: (1) Plaintiff's class claims are precluded by CPLR § 901(b); (2) to the extent Plaintiff purports to waive claims for liquidated damages on behalf of the putative class, she and her counsel cannot be adequate representatives of the putative class; and (3) a class action under Fed. R. Civ. P. 23 is not superior to administrative remedies available to the putative class, particularly because putative class members in this case would have to waive their right to liquidated damages (25% of their potential recovery) and contribute up to a third of their already-diminished recovery for attorneys' fees, neither of which would be necessary in an administrative action.

#### A. Plaintiff's Class Claims Violate CPLR § 901(b).

Plaintiff's state law class claims should be dismissed because they cannot be maintained under the CPLR. Section 901 of the CPLR prohibits the use of a class action under a statute that provides for recovery of a penalty or a minimum measure of recovery. Specifically, subsection (b) of the law states:

> Unless a statute creating or imposing a penalty, or a minimum measure or recovery, specifically authorizes the recovery thereof in a class action, an action to recover a penalty or minimum measure of recovery created or imposed by statute may not be maintained as a class action.

CPLR § 901(b) (emphasis added).

Here, Plaintiff brings a class claim under the New York Labor Law which, among other remedies, provides for the assessment of liquidated damages. (Am. Compl. ¶ 3). Because liquidated damages under the New York Labor Law constitute a penalty within the meaning of CPLR § 901(b), and because the New York Legislature chose not to provide the required

DB1/62364603 2

13

authorization for a class action to seek such damages, Plaintiff may not maintain her claims as a class action. See N.Y. Lab. Law Art. 6, § 198.

The controlling authority of Carter v. Frito-Lay, Inc., 425 N.Y.S.2d 115, 116 (1st Dep't 1980), aff'd, 52 N.Y.2d 994 (1981), is precisely on point. There, the First Department held, in a decision affirmed by the Court of Appeals, that a class claim under the New York Labor Law Article 6, § 198 could not be maintained because the statute "provides for liquidated damages and does not contain the necessary clause allowing these damages to be recovered in a class action." Id. See also Foster v. Food Emporium, No. 99 CIV 3860, 2000 WL 1737858, *3 n.3 (S.D.N.Y. Apr. 26, 2000) ("courts in New York have routinely denied class certification to plaintiffs pursuing statutory claims for unpaid wages on the ground that CPLR 901(b) prohibits it"); Ballard v. Cmty. Home Care Referral Serv. Inc., 695 N.Y.S.2d 130, 132 (2d Dep't 1999) (precluding New York Labor Law class action under CPLR § 901(b)); Caruso v. Allnet Communications Servs. Inc., 662 N.Y.S.2d 468, 470 (1st Dep't 1997) (upholding denial of class certification pursuant to CPLR § 901(b)); Parker v. Equity Adver. Agency, Inc., Mar. 10, 1982 N.Y.L.J. 11, col. 2 (N.Y. Sup. Ct. 1982) (finding that CPLR § 901(b) precluded plaintiffs from bringing a class action under the New York Labor Law).

Chase anticipates that Plaintiff will seek to avoid the preclusion imposed by CPLR § 901(b) by attempting to waive the liquidated damages penalty provided for in Article 6 of the New York Labor Law on behalf of herself and all putative class members. Plaintiff's purported waiver is ineffective, however, because liquidated damages under the New York Labor Law are mandatory and cannot be waived, and because such a waiver would render Plaintiff and her counsel inadequate class representatives.

New York law makes clear that mandatory statutory penalties, such as the liquidated damages penalty under N.Y. Lab. Law § 198, are not waivable and, thus, claims brought under that statute cannot be maintained as a class action. In Asher v. Abbott Labs., 737 N.Y.S.2d 4 (1st Dep't 2002), the First Department held that an action under the Donnelly Act could not be maintained as a class action because the statute provided for a penalty, "the recovery of which in a class action is not specifically authorized and the imposition of which cannot be waived." Id. at 4 (emphasis added); see also Cox v. Microsoft Corp., 737 N.Y.S.2d 1, 2 (1st Dep't 2002) (finding that treble damages are penal in nature and mandatory, and thus refusing to allow a class action under CPLR §901(b)); Rubin v. Nine West Group, Inc., No. 0763/99, 1999 WL 1425364, at *2-3 (N.Y. Sup. Ct. Nov. 3, 1999) (same); Russo and Dubin v. Allied Maint. Corp., 407 N.Y.S.2d 617, 620-21 (N.Y. Sup. Ct. 1978) (same); see also Leider v. Ralfe, 387 F. Supp. 2d 283, 288-89 (S.D.N.Y. 2005) (refusing to certify class action because statute at issue contained a penalty and no specific authorization of class actions).

Because the only New York appellate court to discuss the issue of a mandatory penalty (the First Department in Asher and Cox) has twice ruled that there cannot be a waiver of mandatory penalties under CPLR § 901(b) and that, consequently, any class action seeking such a mandatory penalty should be dismissed under CPLR § 901(b), this Court should follow Asher and Cox. See Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA, Inc., 344 F.3d 211, 221 (2d Cir. 2003) (federal courts are bound to apply state law as interpreted by the state's intermediate appellate courts absent persuasive evidence that the state's higher court, which has not ruled on the issue, would reach a different conclusion).

Here, New York Labor Law § 198 provides that upon a finding that the employer's failure to pay wages was "willful," the Court "shall allow" a prevailing employee "liquidated

damages equal to twenty-five percent of the total amount of the wages found to be due." N.Y. Lab. Law §198(1-a) (emphasis added). Based on this plain, unequivocal language, it is clear that liquidated damages under Section 198 are mandatory upon a finding of willfulness and cannot be waived for strategic convenience. Rubin, 1999 WL 1425364, at *5 (holding that the legislature's use of the word "shall" in the Donnelly Act's treble damages provision renders such damages "mandatory").

Chase acknowledges that despite the controlling authority discussed above some federal court decisions have found that Section 901(b) does not preclude a class action for overtime where the plaintiff has purported to waive liquidated damages. See, e.g., Krichman v. JPMorgan Chase & Co., Civ. Action No. 06-cv-15305 (S.D.N.Y. Dec. 8, 2008); Westerfield v. Washington Mut. Bank, No. 06-2817, 2007 WL 2162989 (E.D.N.Y. July 26, 2007). Respectfully, these decisions must give way to Asher and Cox. None of the decisions relied upon by the courts in Krichman or Westerfield supports the conclusion that a mandatory penalty such as that imposed under New York Labor Law § 198 can be waived to avoid the bar of CPLR § 901(b).

First, the Krichman court relied upon the decision in Cox v. Microsoft Corp., 778 N.Y.S.2d 147 (1st Dep't 2004), which was issued after the decision in Cox v. Microsoft Corp., 737 N.Y.S.2d 1, 2 (1st Dep't 2002), discussed above. The second Cox decision allowed a class action because the underlying statute at issue in that decision -- General Business Law § 349 -- expressly gave plaintiffs the choice to bring an action for actual damages or $50, whichever was greater. The first Cox decision described above, 737 N.Y.S.2d 1 (1st Dep't 2002), to which the court in Krichman does not cite, refused to allow a class action under CPLR § 901(b) because the underlying statute at issue in that decision -- General Business Law § 340 -- provided for a mandatory penalty, similar to Section 198.

Similarly, the Krichman court's reliance on Super Glue Corp. v. Avis Rent a Car Sys., Inc., 517 N.Y.S.2d 764 (2d Dep't 1987), does not support its conclusion because that case indisputably concerned a claim under General Business Law § 349(h), a statute that imposes a discretionary remedy rather than a mandatory penalty. Rubin, 1999 WL 1425364, at *4 ("[T]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages.") (emphasis added).[6]

Therefore, based on the controlling authority set forth above, Chase respectfully requests that the Court dismiss Plaintiff's class claims under the New York Labor Law because the mandatory liquidated damages penalty cannot be pursued as a class action, and cannot be waived.

### B.    Plaintiff's Purported Waiver Of Rights On Behalf Of Herself And The Putative Class Renders Her And Her Counsel Inadequate Representatives.

Even if Plaintiff and her counsel could waive liquidated damages – which they cannot – they cannot waive such damages on behalf of absent class members and still serve as adequate class representatives. Under Fed. R. Civ. P. 23(a)(4), a court cannot certify a class action unless it is satisfied that the representative plaintiff and her counsel will fairly and adequately protect the interests of the class.[7]

---

[6]   Similarly, the cases relied upon by the Court in Westerfield all trace back to the decision in Super Glue Corp., without any recognition of the fact that Super Glue Corp. involved a *discretionary* penalty that could be waived to avoid the class action bar under CPLR § 901(b), unlike the liquidated damages penalty under Section 198.

[7]   Orders striking class allegations – expressly contemplated under Rule 23(d)(4) – are "procedurally inseparable" from Rule 23(c)(1), which provides that "when a person sues or is sued as a representative of a class, the court must – at an early practicable time – determine by order whether to certify the action as a class action." 7B Charles Alan Wright et al., Federal Practice & Procedure § 1795 (3d ed. 2005) (quoting Fed. R. Civ. P. 23(c)(1)). Either party may move for a determination under Rule 23(c)(1), and the Court need not wait for Plaintiff to file a motion for class certification before rendering its decision on these issues. Id. § 1785. See also Connolly v. McCall, 254 F.3d 36, 42 (2d Cir. 2001) (affirming the dismissal of a class claim "on the pleadings and prior to discovery"). For purposes of this motion, Chase only addresses the requirements of adequacy of representation under Rule 23(a)(4), and superiority under Rule 23(b)(3), on certain purely legal grounds and reserves all other arguments relating to the other requirements of Rule 23 for an appropriate time in the future.

The court's decision in <u>Tegnazian v. Consol. Edison, Inc.</u>, 730 N.Y.S.2d 183, 18 (N.Y. County 2000), aptly demonstrates this principle of law. There, the named plaintiffs brought claims for spoiled food arising from a blackout in amounts above the $100 cap Con Ed placed on such reimbursements. <u>Id.</u> at 187. Plaintiffs, however, did not assert potential personal injury claims that members of the putative class might have had due to the blackout. <u>Id.</u> at 187-88. The court held that plaintiffs were inadequate class representatives because they failed to pursue those claims. <u>Id.</u> at 188. In so holding, the court stated:

> The Court is cognizant of the relatively minor amount involved in the majority of the damage claims against Con Ed as a result of the blackout, and the resulting impracticality of pursuing individual actions for each of these minor claims. Nonetheless, these concerns cannot override the necessity of complying with the statutory prerequisites for maintaining a class action, as set forth in CPLR § 901.

<u>Id.</u>

In the instant case, Plaintiff and her counsel cannot waive the liquidated damages under the New York Labor Law on behalf of absent class members and still serve as adequate representatives of the class. By waiving liquidated damages, Plaintiff and her counsel are foregoing an amount equal to 25 percent of the relief available under state law with no countervailing benefit to the putative class or even to Plaintiff herself. Rather, Plaintiff has abandoned these remedies solely to enable her counsel to seek higher attorneys' fees by aggregating a greater number of claims through the vehicle of an opt-out class action with no countervailing benefit to the Plaintiff or the class. By abandoning a significant portion of her own and potential class members' potential remedies, when the sole benefit of this gambit is to aggregate claims under the opt-out class action procedure and, as a result, seek higher attorneys' fees, Plaintiff and her counsel have rendered themselves inadequate class representatives.

Judge McAvoy of the Northern District of New York recognized this precise problem while denying a motion to certify a New York Labor Law claim for overtime:

> With respect to the proposed class members, . . . the Court feels that their rights
> are not adequately protected by employing a class procedure whereby they will
> automatically waive their right to pursue liquidated damages by failing to opt out.
> In other words, this Court does not believe that someone's rights should be
> waived by inaction; that is, by doing nothing. We must not ignore the realities of
> class actions. Most people do not read, let alone understand, class action notices
> they receive in the mail.
>
> * * *
>
> The issue is even more complicated if there are conditions in the notice about
> waiving statutory penalties-subjects about which the recipients of any class notice
> are likely to know nothing about, let alone understand. The Court finds it hard to
> believe that the proposed class members would be knowingly and voluntarily
> relinquishing their rights to seek liquidated damages by failing to opt-out of a
> New York Labor Law class action. Yet, that is exactly what would happen if the
> Court were to permit the Labor Law claims to proceed as a class claim.

De La Cruz v. Gill Corn Farms, No. 03-CV-1133, 2005 WL 5419056, *2 (N.D.N.Y. Jan. 25,

2005); see also Myers v. The Hertz Corporation, 2007 U.S. Dist. LEXIS 53572, * 20 (E.D.N.Y.

2007) (waiving entitlement to liquidated damages is a "significant sacrifice").[8]

Plaintiff's counsel have done exactly what the adequacy of representation requirement

was designed to prevent – put their own interests above the interests of the class and their own

client. Amchem Prods., 521 U.S. 591, 626 n.20 (1997) ("The adequacy heading also factors in

competency and conflicts of class counsel."). Other courts have held that a plaintiff's adequacy

as class representatives is substantially compromised when they and their counsel are willing to

waive class members' statutory right to liquidated damages or other mandatory penalties. See,

e.g., Foster v. Food Emporium, No. 99 CIV 3860, 2000 WL 1737858, at *3 n.3 (S.D.N.Y. Apr.

26, 2000) ("[A]ttempts by plaintiffs to get around CPLR 901(b) by waiving the liquidated

damages remedy have been rejected by courts as undermining putative lead plaintiffs' ability to

represent others who have a statutory right to the remedy."); In re Methyl Tertiary Butyl Ether

---

[8]   *Res judicata* considerations make clear why class representatives are inadequate if they fail to bring available
claims on behalf of the class in the same action. Failing to do so precludes the absent class members from
asserting those related claims in a second action. In re Methyl Tertiary Butyl Ether ("MATE") Prods. Lab.
Litig., 209 F.R.D. 323, 339 (S.D.N.Y. 2002); Small v. Lorillard Tobacco Co., 679 N.Y.S.2d 593, 601-02 (1st
Dep't 1998), aff'd, 94 N.Y.2d 43 (1999); Reilly v. Reid, 45 N.Y.2d 24, 27-30 (1978).

("MTBE") Prods. Liab. Litig., 209 F.R.D. 323, 339-40 (S.D.N.Y. 2002) (class members seeking only injunctive relief could not be adequate class representatives for absent class members with other claims for damages); Western States Wholesale, Inc. v. Synthetic Indus. Inc., 206 F.R.D. 271, 277 (C.D. Cal. 2002) ("[a] class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class"); Feinstein v. Firestone Tire & Rubber Co., 535 F. Supp. 595, 606 (S.D.N.Y. 1982) (holding that plaintiffs who pursue only some of the claims available to the class to obtain class certification are not adequate representatives). As the court reasoned in Woods v. Champion Courier, Oct. 9, 1998 N.Y.L.J. 26, col 1 (N.Y. Sup. Ct. 1998), "it is difficult to see how a class representative can 'fairly and adequately' represent the class if he has not at least investigated the possibility for another and better means of vindicating the class' rights."

Plaintiff's abandonment of a potential penalty equal to 25 percent of the relief available to each member of the class solely in the pursuit of higher attorneys' fees renders Plaintiff and her counsel inadequate to represent the putative class. Accordingly, Plaintiff's state law class claims should be dismissed.

## C.  Plaintiff's Class Claim Should Be Dismissed Because A Class Action Is Not Superior To Other Available Methods Of Adjudication.

Plaintiff's New York Labor Law class claims should also be dismissed because litigating those claims as an opt-out class action is not the superior method of adjudication. Presumably, Plaintiff will seek class certification under Rule 23(b)(3) for her class claims for monetary relief. (See Am. Compl. § 34). A court may certify a class under Rule 23(b)(3) only if it finds that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). See also Mike v. Safeco Ins. Co. of Am., 223 F.R.D. 50, 52 (D. Conn. 2004) (finding class action was not the superior method of adjudicating the claims

in the complaint).  To find superiority, a court must determine that <u>all</u> other methods of resolving the issues in the case are inferior to a class action under Rule 23.  <u>Schwartz v. Dana Corp./Parish Div.</u>, 196 F.R.D. 275, 285 (E.D. Pa. 2000).

In this case, a superior method of adjudicating the claims of putative class members exists:  administrative enforcement action through the New York State Department of Labor.  The New York Labor Law provides multiple administrative remedies to employees who believe their employer has failed to properly compensate them for all time worked.  Indeed, the Appellate Division of the State of New York, Third Department, recently upheld the denial of class certification in a class action asserting overtime claims under the New York Labor Law -- the same claims at issue here – in part because it found that a class action was not superior to the New York Labor Law's administrative remedies, which provide a "relatively swift, cost-free administrative resolution" of an employee's wage claims.  <u>Alix v. Wal-Mart Stores, Inc.</u>, 838 N.Y.S.2d 885, 899 (N.Y. Sup. Ct. 2007), <i>aff'd</i> 2008 Slip Op. 9509, 2008 N.Y. App. Div. LEXIS 9210, *9 (3d Dep't Dec. 4, 2008).

In <u>Alix</u>, the plaintiffs filed a purported class action complaint against Wal-Mart alleging that it failed to properly compensate them for work performed before their shifts began or after their shifts ended.  838 N.Y.S.2d at 887.  Plaintiffs asserted claims for violation of New York Labor Law Article 6 (for failure to pay earned wages) and Article 19 (for failure to pay time-and-one-half for work in excess of forty hours per week) and sought to proceed as a class action.  <u>Id.</u> at 889.  The trial court denied plaintiffs' motion for class certification in part because there were a "panoply of administrative remedies" available to the plaintiffs contained in sections 101, 196, 196-a, 218, 660 and 663 of the New York Labor Law.  <u>Id.</u>  Among other things, these sections of the New York Labor Law empower the Commissioner of Labor to investigate wage claims, enter

an employer's place of business and examine books, registers, payrolls and other records, direct an employer to pay wages or supplements found by the Commissioner to be due (together with interest), and sue an employer for wages or supplements due to an employee. The New York Labor Law also empowers an employee to file, directly with the Commissioner, a complaint for unpaid wages for prompt administrative action. The trial court also noted that enforcement of the New York Labor Law's wage provisions had been deemed by the State Legislature to be the "mandate of the Department of Labor" to be pursued with "vigor and fairness." Id. at 898.

The trial court in Alix relied upon the Third Department's decision in Matter of Angello v. National Finance Corp., 769 N.Y.S.2d 66 (3rd Dep't 2003). In National Finance, an employer closed a local office of its mortgage business and dismissed the employees of that branch. Thirty-five (35) of those employees filed complaints with the Commissioner of Labor for unpaid wages and benefits. Following an administrative investigation, the Commissioner issued orders directing the employer to pay the claims. The trial court in Alix identified several aspects of the National Finance decision that demonstrated the effectiveness and utility of the administrative remedy. First, many of the claims were for very modest sums of money ($47 and $62, for example). Alix, 838 N.Y.S.2d at 899. Next, none of the 35 claimants needed to retain counsel, as the Commissioner proceeded on their behalf at the administrative level and the Attorney General advocated their positions in the employer's action challenging the agency's administrative orders. Finally, the matter was concluded relatively swiftly. Id.

The Appellate Division, Third Department, affirmed the trial court's determination that administrative enforcement action was superior to a class action. After noting an employee's ability to file wage related complaints with the Department of Labor, the Appellate Division stated that "[t]he availability of this administrative process, and its focus on the particulars

applicable to each employee's claim, make it in many ways a superior method by which the claims made by plaintiffs, and the proposed members of the class, can be pursued against defendant." Alix v. Wal-Mart Stores, Inc., 2008 Slip Op. 9509, 2008 N.Y. App. Div. LEXIS 9210, *9 (3d Dep't Dec. 4, 2008).   The determination by a New York appellate court that the administrative remedies available under the New York Labor Law are superior to an opt-out class action under the New York Labor Law is controlling of this same issue in this case.   See Blue Cross and Blue Shield of N.J., Inc., 344 F.3d at 221.

Similarly, administrative enforcement action through the New York State Department of Labor is superior to a class action because the individuals would not be required to waive their claims for liquidated damages (enhancing their recovery by 25 percent).   Judge Cogan of this Court recently denied class certification of claims under the New York Labor Law in part because he found that a class action to recover wages under New York Labor Law Article 6 is not superior to "other options" because plaintiffs pursuing the class action must make "at least one significant sacrifice over people who sue individually—waive their entitlement to recover liquidated damages." Myers v. The Hertz Corporation, 2007 U.S. Dist. LEXIS 53572, * 20 (E.D.N.Y. 2007).

In addition, individuals who pursue an administrative action would not need to retain counsel or contribute up to a third of their recovery for attorneys' fees.   Rather, the New York Legislature has established an agency specifically to enforce the New York Labor Law and pursue claims on behalf of individuals, which does not require them to incur significant attorneys' fees. Alix v. Wal-Mart Stores, Inc., 838 N.Y.S.2d 885, 899 (N.Y. Sup. Ct. 2007), aff'd No. 504339 (3rd Dep't December 4, 2008) (in pursuing an administrative action in National Finance Corp., "none of the claimants needed to retain counsel, as the Commissioner proceeded

on their behalf at the administrative level, while the Attorney General advocated their positions in the article 78 proceeding challenging the agency's administrative determinations").

A procedural mechanism that results in a 25 percent reduction of the available recovery for six years of the limitations period, with the loss of an additional one-third to attorneys' fees, cannot possibly be the superior method of adjudication. See Woods v. Champion Courier, Inc., Oct. 9, 1998 N.Y.L.J. 26, (col. 1) (N.Y. County 1998) (holding that a class action to recover wages under the New York Labor Law pursuant to Article 6, § 198 and Article 19, § 663 is not a superior method of adjudication because liquidated damages were not available to recover in a class action); Alix, 838 N.Y.S.2d at 899. Because a class action is not superior to other available avenues for the adjudication of the claims of absent class members as a matter of law, the Court should dismiss Plaintiff's class claims.

## CONCLUSION

For the foregoing reasons, Chase respectfully requests that the Court dismiss both of Plaintiff's causes of action in their entirety or, alternatively, dismiss or strike Plaintiff's class claims.

Respectfully submitted,

DATED:  December 22, 2008

    /S/ Sam S. Shaulson
Sam S. Shaulson (SS 0460)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
212.309.6718
212.309.6001 (fax)

ATTORNEYS FOR DEFENDANT
JPMorgan Chase Bank, N.A.